UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN LAING,

      Plaintiff,

v.                                   CASE NO.: 8:13-cv-1041-T-23TGW

BP EXPLORATION & PRODUCTION
INC., et al.,

      Defendants.

_____/

**ORDER**

    John Laing sues (Doc. 1) BP for unjust enrichment, violation of Florida's Deceptive and Unfair Trade Practices Act, violation of Florida's Uniform Trade Secrets Act (FUTSA), fraudulent misrepresentation, breach of fiduciary duty, civil theft, and conversion.  BP moves (Docs. 14 and 27) to dismiss the complaint.

**BACKGROUND**

    The seven counts asserted by Laing putatively result from the notorious BP Deepwater Horizon oil leak, which began on April 20, 2010, with a catastrophic explosion on an off-shore drilling platform.  In the months following the explosion, oil escaped into the Gulf of Mexico from a ruptured vessel in deep water.  BP searched urgently for a means to repair the ruptured vessel.  In an internet post to

those aiming to submit a proposed method of repair, BP requried submission of each

proposal in a particular format.  BP's website described how BP would process the

proposals:

> [The proposal] is sent for triage by a team of 30 technical and
> operational personnel who will review its technical feasibility and
> application. Given the quantity of the proposals and the detail in
> which the team investigates each idea, the technical review can take
> some time. Each idea is sorted into one of three categories:
>
> • Not possible or not feasible in these conditions;
> • Already considered/ planned or;
> • Feasible.
>
> The feasible ideas are then escalated for a more detailed review,
> potential testing and field application. So far, around 100 ideas are
> under further review.
>
> Each submitter receives a reply informing them of the outcome. Those
> whose ideas are considered feasible will be contacted by BP if, and
> when, their support is needed.

(Doc. 22 at 9)

Laing formulated a proposal and "met with Engineer Bruce Laurion of the

Port of Tampa and Assistant Port Director Zelco Kirincich to discuss [Laing's]

design for capping the oil well."  (Doc. 22 at 3)  Soon afterward, Liang presented the

idea to Lieutenant Commander Kevin Carroll of the U.S. Coast Guard.  Carroll "met

with Mr. Laing, discussed [Laing's] design, gathered drawings and other documents

about the design, and took pictures of [Laing's] model."  (Doc. 22 at 3)  Carroll

forwarded the "design and supporting documents" to BP.  (Doc. 22 at 3)  Also, Laing

sent a video presentation of a "working model" to Carroll.  (Doc. 22 at 4)  Three days later, Laing received from BP a letter acknowledging Laing's submission and stating, "A similar approach has already been considered or planned for possible implementation."  (Doc. 1 at 19)

After BP contained the oil leak, Laing "obtained and reviewed the design used by BP" and concluded that the design "was nearly identical to the one [Laing] had submitted."  (Doc. 22 at 4)  Several months later, Laing's attorney sent BP a letter and stated that Laing "wishe[d] to begin negotiation as to the value of the information and plans submitted."  (Doc. 1 at 20)  In a response letter that claimed receipt of more than 100,000 proposals, BP states:

> The technical team reviewing suggestions did not progress Mr. Laing's proposal past the first stage of review. Accordingly, it was not forwarded to the teams developing the equipment and processes used in the Gulf of Mexico, and thus was not used by BP.
>
> BP truly appreciates the time and effort of your client to submit his proposal. Because BP did not implement his proposal, however, we do not consider compensation to be justified.

(Doc. 22 at 18)

## DISCUSSION

*1. Florida Statutes § 501.972*

Entitled "Actions based upon use of a creation that is not protected under federal copyright law," Section 501.972, Florida Statutes, states:

- 3 -

(1) Except as provided in subsection (2), the use of an idea, procedure, process, system, method of operation, concept, principle, discovery, thought, or other creation that is not a work of authorship protected under federal copyright law does not give rise to a claim or cause of action, in law or in equity, *unless the parties to the claim or cause of action have executed a writing sufficient to indicate that a contract has been made between them governing such use.*

(2) Subsection (1) does not affect or limit:

    (a) Any cause of action based in copyright, trademark, patent, or trade secret; or

    (b) Any defense raised in connection with a cause of action described in paragraph (a).

(emphasis added)  In sum, as applied in this action, Section 501.972 precludes any of the six[1] counts arising from BP's use of Laing's (claimed) idea unless BP and Laing "executed a writing" sufficient to evidence a contract governing the idea's use or unless the idea is "based in . . . trade secret."  No qualifying writing exists, and only one count for "use of an idea" is "based in . . . trade secret."

Specifically, BP argues that Section 501.972 precludes Counts I, II, V, VI, and VII because Laing "does not allege the existence of any writing executed by BP sufficient to indicate that he and BP entered into a contract governing the use of his idea."  (Doc. 14 at 8)  In response, Laing has not argued that Section 501.972(1) is

---

[1] One of Laing's seven counts, Count IV, arises from an allegedly false statement, not BP's use of an idea.

inapplicable to the five counts identified by BP.[2]  Instead, Laing argues that each count is excluded from the requirement of Section 501.972(1) by Section 501.972(2)(a), which exempts "[a]ny cause of action based in . . . trade secret."

Although Laing argues correctly that the statute is inapplicable to a "cause of action based in . . . trade secret," only Count III, which alleges a violation of FUTSA, is "based in . . . trade secret."  BP's motion to dismiss acknowledges that the prohibition of Section 501.972 is inapplicable to Count III but argues that Section 501.972 precludes Counts I, II, V, VI, and VII, none of which is a "cause of action based in . . . trade secret."  Count I is based in the law of unjust enrichment. Count II is a statutory claim based in the law of unfair and deceptive practices in the conduct of a trade or of commerce.  Count V is based in the law that governs a fiduciary.  Count VI is a statutory claim based in the law of civil theft.  County VII is based in the law of conversion.  Unlike a claim for violation of FUTSA, neither the

_____

[2] Laing's failure to argue that Subsection (1) is inapplicable is understandable. As the complaint evidences, Counts I, II, V, VI, and VII each allege the "use of an idea." Fla. Stat. § 501.972(1). Count I rests on BP's having "refused to pay Plaintiff for the use of [Laing's] design." (Doc. 1 at 6) Count II rests on BP's "[m]isappropriation of a business idea, without compensating the creator of the idea." (Doc. 1 at 7) Count V rests on BP's having "misappropriat[ed] Plaintiff's design for its own use without compensating Plaintiff." (Doc. 1 at 10) Count VI rests on BP's having "misappropriat[ed] Plaintiff's design for Defendant's own benefit." (Doc. 1 at 11) Count VII rests on BP's having "misappropriat[ed] [Laing's] design." (Doc. 1 at 12)

Also, the only precedent considering Section 501.972 holds that an idea to end the BP Deepwater Horizon oil spill is not "a work of authorship protected under federal copyright law." *Kaminski v. BP Exploration & Prod. Inc.*, 2013 WL 5353287, at *11 (M.D. Fla. Sept. 24, 2013) (Bucklew, J.) ("Plaintiff's ideas are not works of authorship and are expressly excluded from protection under the Copyright Act; Section 501.972 therefore applies to BP's use of Plaintiff's idea.").

existence of a trade secret nor the use or misuse of a trade secret nor any element of the law that governs a trade secret nor any other aspect of a trade secret is essential to a statement of any of these claims – not an unjust enrichment, not an unfair or deceptive trade practice, not a breach of fiduciary duty, not a civil theft, and not a conversion.

Accordingly, in this action Section 501.972(2)(a) permits Count III to escape the writing requirement of Section 501.972(1), but the requirement applies to Counts I, II, V, VI, and VII, that is, Laing's remaining counts that arise from the "use of [Laing's] idea, procedure, process, system, method of operation, concept, principle, discovery, thought, or other creation that is not a work of authorship protected under federal copyright law."

Laing argues that, if Section 501.972 applies to any count, BP's internet post, Laing's letter demanding compensation, and BP's letter in response to the demand, "taken together, show that the parties intended to enter into an agreement provided that Mr. Laing's design w[as] used, and if it were, Mr. Laing would be compensated for its use." (Doc. 22 at 9) However, Section 501.792 requires "the parties to the claim . . . [to] have executed a writing sufficient to indicate that a contract has been made." Neither the web posting nor either of the letters – each of which is "signed" by only one party – constitutes "a writing" "executed" by "the parties." Accordingly, Section 501.972 precludes Counts I, II, V, VI, and VII.

*2. Trade Secret*

"In a trade secret action, the plaintiff bears the burden of demonstrating both that the specific information it seeks to protect is secret and that it has taken reasonable steps to protect this secrecy." *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1410 (11th Cir. 1998) (interpreting Florida law); *see also* Fla. Stat. § 688.002 (requiring "efforts that are reasonable under the circumstances to maintain [the idea's] secrecy").

BP argues that Laing fails to "take[] reasonable steps to protect [the idea's] secrecy." BP notes that Laing marked no document submitted to Carroll as "confidential" or as "secret," that Laing never asked Carroll to treat the idea as secret, that Laing asked Carroll to share the idea with BP,[3] and that Laing presented the idea to Laurion and Kirincich.[4]

Citing *Treco International S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1286 (S.D. Fla. 2010) (King, J.), Laing argues that the adequacy of an effort to maintain secrecy "cannot be resolved on a motion to dismiss." (Doc. 22 at 12) To the contrary, "on a motion to dismiss, the movant must present 'clear authority' that the information that

---

[3] In a letter from Laing to Carroll, Laing states, "I'd like someone from BP [to] look at this and give me their opinion." (Doc. 1 at 16)

[4] BP calls Laurion and Kirincich "unidentified attendees of a '3:30 demonstration.'" (Doc. 14 at 3) The plaintiff's response clarifies that the attendees are Laurion and Kirincich. (Doc. 22 at 3)

the plaintiff identifies is not protected." *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (Moreno, J.); *accord Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 2d 1271, 1292 (S.D. Fla. 2001) (Gold, J.) ("Absent clear authority that [the] information is not protected under [FUTSA], [the plaintiff's] complaint will not be dismissed on the basis that the [information] is not a trade secret."); *see also Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1077 (S.D. Fla. 2003) (Moreno, J.) (dismissing a trade secret claim because the complaint stated only that the parties had an "expectation that [the idea] would remain confidential").

"Clear authority" holds that an idea is not reasonably maintained in requisite secrecy if disclosed to a government official without an accompanying mechanism to maintain secrecy. *In re Maxxim Med. Grp., Inc.*, 434 B.R. 660, 691 (Bankr. M.D. Fla. 2010) ("Disclosure of information to others who are under no obligation to protect the confidentiality of the information defeats any claim that the information is a trade secret."); *Cubic Transp. Sys., Inc. v. Miami-Dade County*, 899 So. 2d 453, 454 (Fla. 3d DCA 2005) (holding that by failing to mark documents provided to the county as "confidential," the plaintiff failed to protect the secrecy of the documents); *Sepro Corp. v. Fla. Dep't of Envtl. Prot.*, 839 So. 2d 781, 784 (Fla. 1st DCA 2003) ("[T]he failure to identify information furnished to a state agency as putatively exempt from public disclosure effectively destroys any confidential character it might otherwise

have enjoyed as a trade secret. . . .  The trade secret owner who fails to label a trade secret as such, or otherwise to specify in writing upon delivery to a state agency that information which it contends is confidential . . . , has not taken measures or made efforts that are reasonable under the circumstances to maintain the information's secrecy.").  Accordingly, by unconditionally disclosing his idea to Laurion, Kirincich, and Carroll, Laing failed to "take reasonable efforts to maintain [the] secrecy" of his idea.  Similarly, Laing failed to treat the idea as a trade secret when he directed Carroll to present the idea to BP and included no statement, written or verbal, that the idea should remain confidential.

Citing *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 475 (1974), Laing argues that the disclosures to Laurion, Kirincich, Carroll, and BP fail to "destroy the preservation element."  (Doc. 22 at 12)  However, *Kewanee* construes Ohio, not Florida, law.[5]  Accordingly, Laing's failure to proffer even one (Florida) case

---

[5] Although in response to a different argument, Laing also states:

> The fact that no written confidential agreement was executed by the parties is not fatal because confidentiality will be inferred by the nature of the party's relationship. Default Proof Credit Card System, Inc. v. State Street Bank & Trust Co. 753 F.Supp.1566 (SD Fla. 2011) ("A confidential relationship will be implied where the facts demonstrate disclosure was made to promote a special relationship.").

However, *Default Proof*, construes Massachusetts, not Florida, law, proof of which Laing's deceptive citation omits. Including more context, *Default Proof*, 753 F. Supp. at 1572-73, states:

(continued...)

supporting his approach bolsters the conclusion that "clear authority" supports dismissal of the trade secret count.

*3. Fraudulent Misrepresentation*

"[T]here are four elements of fraudulent misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (internal quotation marks omitted). BP argues that Laing's fraudulent misrepresentation count fails to state a claim because Laing "fails to plead any facts showing actual reliance on the alleged misrepresentation or any injury caused by the misrepresentation." (Doc. 14 at 11) BP also argues that the only injuries Laing identifies are "damages resulting from the alleged improper use of his alleged idea (i.e., failure to receive compensation), not damages that resulted from some undisclosed reliance on the allegedly fraudulent letter denying such compensation." (Doc. 14 at 11) BP is right in both respects.

---

[5] (...continued)
Defendant's arguments fail to acknowledge that under Massachusetts law – which Defendant argues and this Court agrees is the controlling law in the case at bar – there is no requirement that a confidential relationship be expressly established. Rather, a confidential relationship will be implied where the facts demonstrate that disclosure was made to promote a special relationship.

## CONCLUSION

BP's motions (Doc. 14 and 27) to dismiss are **GRANTED**.  The

complaint (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.  No later than

**FEBRUARY 10, 2014**, Laing may amend the complaint to comply with this order.

ORDERED in Tampa, Florida, on January 23, 2014.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE